IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:13-cv-277

| | | |
|---|---|---|
| DON BRADLEY WALLACE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| OPTIMUM OUTCOMES, INC., an | ) | |
| Illinois corporation, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes now before the court on the parties' cross-motions for summary judgment (DE 15, DE 17), which motions are fully briefed. In this posture, the issues raised are ripe for adjudication. For the following reasons, summary judgment is granted in part and denied in part as to each party, with defendant succeeding on plaintiff's first two claims, and plaintiff succeeding on his remaining third claim for relief.

## STATEMENT OF THE CASE

Plaintiff filed the instant suit in state court on March 5, 2013, alleging violations of the North Carolina Collection Agency Act ("NCCAA"), N.C. Gen. Stat. § 58-70-1 *et seq*. (Count One); the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* (Count Two); and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (Count Three). Upon its removal from the Cumberland County Superior Court, and after several reassignments, the case ultimately was assigned to the undersigned on March 24, 2014.

After a period of discovery conducted pursuant to order of the magistrate judge, entered May 21, 2013, plaintiff and defendant filed their respective cross-motions for summary judgment March

14, 2014, the deadline established by the magistrate judge for the making of dispositive motions in the case. Defendant's motion, filed at 11:37 a.m. that date, was followed on the docket by plaintiff's about 12 hours later, or just prior to the close of day, with plaintiff relying in large part on defendant's offerings in support of its motion.

Defendant relies on a "Cease Communication and Attorney Representation Letter," dated May 14, 2012, from plaintiff's attorney to Absolute Collection Service ("ACS"), a debt collection service; the affidavit of Robb C. Cass, Jr., former president of ACS; and plaintiff's February 14, 2014, deposition. Plaintiff relies in furtherance of his motion for summary judgment on his deposition testimony together with Cass's affidavit, as submitted by defendant, and his initial disclosures in the case.[1]

## STATEMENT OF THE UNDISPUTED FACTS

Pertinent to the facts of this case and the earlier one intertwined with it, initiated by complaint filed by plaintiff in Cumberland County District Court May 15, 2012, against ACS (subsequently removed to this court, Wallace v. Absolute Collection Serv., No. 5:12-CV-351-D (E.D.N.C.)), in a letter dated May 14, 2012, plaintiff's counsel demanded that ACS refrain from contacting his client about a debt owed by an individual named Wesley Wilson ("Wilson"). (Def.'s Exh. 1) (DE 16-1) ("May 2012 Letter"). The May 2012 Letter includes a subject heading which reads "**Re: Brad Wallace phone number 919 285 9647**," and states in part:

---

[1] As a part of his disclosures made June 19, 2013, plaintiff offers that he "is still hiking the Appalachian Trail and is not easily contactable, nor does he have ready access to his records, but has obtained a copy of his mobile phone bill for December 2012 and photographs of his caller ID and visual voicemail indicating calls to Wesley Wilson from Defendant." Three duplicative, distorted screen shots of varying clarity, indicating attempted message for Wilson on January 10, 2013, are attached together with what purports to be a partial copy (extending only through December 20, 2012) of a Sprint bill represented as covering the period December 13, 2012, to January 16, 2013, for account number 658944355 (cellular telephone number (919) 753-4712). While no certification accompanies these documents there appears no dispute concerning their authenticity.

2

> Do not contact my client or anybody else regarding the collection of any debt or alleged debt whatsoever, specifically including but not limited to an alleged medical debt that you claim someone named Wesley Wilson to owe. . . . [A] Seventh Circuit decision under the Telephone Consumer Protection Act . . . holds firmly that bill collectors may not use autodialers to call mobile phone customers unless they gave the creditor permission to do so. . . . Violations carry a $500 civil penalty, tripled for willful or knowing conduct, *per violation*, that is, every time your autodialer calls a cell number without the current customer's permission. You continue to do this at your peril.
>
> As your company always denies that it has ever violated the law in any way even if it has indisputably done so, and refuses to pay any settlements it agrees to, there is no use in discussing settlement, so we will simply sue you in the near future...

(May 2012 Letter, 1) (DE 16-1) (emphasis added).

As noted, the following day, plaintiff filed a complaint against ACS, alleging violations of the NCCAA, the FDCPA and the TCPA. Plaintiff and ACS ultimately resolved the suit, and the case was terminated by stipulation of dismissal filed December 4, 2012. Although plaintiff previously had owned cellular telephone number (919) 285-9647, by the time of dispatch of the May 2012 Letter, plaintiff's cellular telephone number had changed to (919) 753-4712. (Wallace Dep., 63:9-65:21-22) (DE 16-5). It is uncontraverted that plaintiff did not inform defendant of his new telephone number.

ACS researched the complaint presented by the May 2012 Letter and found that, while a number of accounts were associated with an individual by the name of Wilson, none matched the (919) 285-9647 cellular telephone number identified therein. (Cass Aff., ¶ 7) (Def.'s Exh. 2) (DE 16-2). Eventually, to avoid calling plaintiff, ACS deleted all telephone numbers associated with the various Wilson accounts which had been placed for collections. (Id. at ¶ 8). ACS maintains technology which prevents the company from calling telephone numbers on existing or new accounts associated with numbers in a "do not call" file. (Id. at ¶ 9). If plaintiff had provided his

3

current telephone number, (919) 753-4712, that number would have been added to the file. (Id. at ¶ 10). Around July 2012, an entity denominated "Revenue Cycle Solutions, Inc." obtained certain portions of ACS's business, including, as pertinent here, debt collection assets and data, and the "do not call" file. (Cass Aff., ¶¶ 11-12). The name of that company later was changed to "Optimum Outcomes, Inc.," the name of defendant here. (Id. at ¶ 11). In November 2012, a creditor assigned a new account to defendant for collection of a debt belonging to Wilson. (Id. at ¶ 18). On two occasions, plaintiff was attempted to be contacted concerning this debt, through its telephone number (800) 752-4172.

Plaintiff's cellular telephone records show that plaintiff received a call from (800) 752-4172 at his (919) 753-4712 cellular telephone number, logged at a two minute duration, on December 20, 2012. (Pl.'s Rule 26 disclosures, 6) (DE 17-1). On January 10, 2013, it appears plaintiff received a call from the (800) 752-4172 number on a cellular telephone from which he was able to capture part of a message where duplicative records tendered to the court concerning plaintiff's visual voicemail include in some form or part the following:

> Hello, this is a message for Wesley Wilson once again this is a message for Wesley Wilson if you are not Wesley Wilson please hang up or disconnect immediately if you are Wesley Wilson please continue to listen to this message by continuing to listen to this message you acknowledge you are Wesley . . . .

(Id. at 5, 7, 8). There are no corresponding records showing this January call to plaintiff's cellular telephone number (919) 753-4712, however, where only the first page concluding with a December 20, 2012, entry in what appears to be a multi-page telephone record evidencing "Voice Call Details" was made a part of the record by plaintiff. (Id. at 6). That document refers to "A1 of 5"; pages A2-A5 were not included. (Id.)

## DISCUSSION

4

A.      Standard of Review

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other discovery materials properly before the court demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to find for the non-moving party). When faced with cross-motions for summary judgment, the court must ask "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251; see also Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) ("[T]he court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.") (internal citations and quotations omitted).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250. In making this

5

determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

B.     Analysis

Plaintiff agrees that summary judgment should be granted for defendant on plaintiff's NCCAA claim (Count One) and FDCPA claim (Count Two); however, he maintains his entitlement to summary judgment on plaintiff's TCPA claim (Count Three):

> After discovery and upon consideration of [defendant's] legal arguments, particularly as to the improvident wording of NCGS §§ 28-70-90 and -130 that appears to leave innocent consumers without protection in certain factual scenarios, Plaintiff concedes that [defendant] is entitled to summary judgment as to NCCAA and FDCPA claims in the Complaint. TCPA is another story altogether.

(Pl.'s Resp. in Opp., 3) (DE 21).

While no dispute persists as to defendant's entitlement to summary judgment on the first two claims asserted, the court's reasoning for entry of judgment does not rest on "improvident" statutory wording. For the reasons that follow, the court grants defendant summary judgment on plaintiff's NCCAA and FDCPA claims. The court grants plaintiff summary judgment on the disputed TCPA claim, all as set forth below.

  1. NCCAA

Plaintiff alleges that defendant's conduct "violated [N.C. Gen. Stat.] § 58-70-100 in general and -100(3) in particular." (Compl. ¶ 28) (DE 1-1). Section 58-70-100 generally prohibits collection agencies from engaging in "any conduct, the natural consequence of which is to oppress, harass, or abuse any person in connection with the attempt to collect any debt." Section 58-70-100(3) specifically provides that such conduct includes "[c]ausing a telephone to ring or engaging

6

any person in telephone conversation with such frequency as to be unreasonable or to constitute a harassment to the person under the circumstances."

The relevant enforcement provision provides that "[a]ny collection agency which violates Part 3 of this Article with respect to any debtor shall be liable to that debtor in an amount equal to the sum of any actual damages sustained by the debtor as a result of the violation." N.C. Gen. Stat. § 58-70-130(a). In addition, it further provides that a collection agency shall "also be liable to the debtor for a penalty in such amount as the court may allow," between $500 and $4,000 per violation. N.C. Gen. Stat. § 58-70-130(b).

Plaintiff offers no facts to support that he qualifies as a "debtor," and does not dispute that this provision's limitation of remedies to a "debtor" bars his claim under the NCCAA. Accordingly, plaintiff has failed to carry his burden of showing "specific facts showing that there is a genuine issue for trial." Matsushita Elec., 475 U.S. at 586-87. The court therefore grants defendant summary judgment on this claim.

2. FDCPA

Similar to the NCCAA, the FDCPA generally prohibits a debt collector from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. The statute specifically prohibits "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. §1692d(5). In determining liability under 1692d(5), courts have considered the volume and pattern of calls made to the debtor. Akalwadi v. Risk Mgmt. Alt., Inc., 336 F. Supp. 2d 492, 505-06 (D. Md.

2004); see also Breeders v. Gulf Coast Collection Bureau, 796 F. Supp. 2d 1335, 1337 (M.D. Fla. 2011) (collecting cases).

Defendant argues that based on the record, showing a mere two calls to plaintiff's cell phone number, made weeks apart, wherein there is no evidence that defendant misidentified itself or used any profane or obscene language, there is no genuine issue that the "natural consequence" of defendant's conduct was not "to harass, oppress, or abuse" under 15 U.S.C. § 1692d. Plaintiff fails to identify any facts supporting that this conduct did have such a "natural consequence," but rather concedes that summary judgment should be granted on his FDCPA claim. Accordingly, on this claim as well, the court finds plaintiff has failed to carry his burden of showing "specific facts showing that there is a genuine issue for trial," Matsushita Elec., 475 U.S. at 586-87, and grants summary judgment.

3. TCPA

Consumer complaints about abuses of telephone technology prompted Congress to pass the TCPA. Mims v. Arrow Financial Services, LLC, 132 S.Ct. 740, 742 ( 2012). The TCPA makes it unlawful

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice –
>
> *****
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii). "A person or entity" can bring a claim to recover the greater of actual damages or $500.00 for each violation. Id. at § 227(b)(3)(A)-(C). Courts are given discretion to

8

award an amount equal to not more than $1,500.00 for each violation, if the court finds that the defendant's violation was willful or knowing. 47 U.S.C. § 227(b)(3).

Plaintiff's standing is not disputed. Moreover, defendant does not dispute that it used an automatic telephone dialing system to call plaintiff's telephone number, or that the calls were made to a cellular telephone service.

Defendant's argument in support of its motion centers around plaintiff's asserted misrepresentation of his cellular telephone number in the letter sent by counsel to ACS on May 14, 2012. Defendant argues that, if plaintiff had provided the correct phone number, that number would have been added to a "do not call" file, thereby preventing future calls. Defendant raises this equitable estoppel argument both to support its own motion for summary judgment, and in response to plaintiff's motion for summary judgment. Moreover, defendant supplements this argument with contention that plaintiff has breached a duty to mitigate his damages.

"Equitable estoppel precludes a party from asserting rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity." Am. Bankers Ins. Group, Inc. v. Long, 453 F.3d 623, 626-27 (4th Cir. 2006). The principle applies when "one person makes a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it and the other in reasonable reliance upon it does an act." Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc., 467 U.S. 51, 59 (1984). "The party claiming the estoppel must have relied on its adversary's conduct in such a manner as to change his position for the worse." Id. Defendant has not provided evidence, however, that plaintiff's misrepresentation led defendant to change its position for the worse.

9

Plaintiff's May 2012 letter instructed ACS (and ultimately, defendant) not to call the number (919) 285-9647. Defendant was unaware of the new number (919) 753-4712 and took no action concerning it. While defendant argues it would have changed its position had it known of that number, so as to include it on its "do not call" list, there was no effort by plaintiff to misrepresent himself. It remained defendant's obligation under the TCPA not to use an autodialer or prerecorded voice to call "any telephone number assigned to a . . . cellular telephone service," 47 U.S.C. § 227(b)(1)(A), including plaintiff's new cellular telephone number. The TCPA places no affirmative duties on telephone subscribers to notify companies that the subscriber does not wish to be called.

Given the failure of defendant's equitable estoppel argument, and by association any defense based on failure to mitigate, there is no genuine issue of material fact as to defendant's liability under the TCPA. Accordingly, on the issue of liability under the TCPA, plaintiff's motion for summary judgment is ALLOWED and defendant's corresponding motion for summary judgment must be and is DENIED. The court turns it attention below to a discussion of the relief to be awarded in this case.

        b.        Treble Damages and Attorney's Fees

Plaintiff seeks attorneys' fees and costs. Unlike other federal consumer laws such as the Fair Debt Collection Practice Act, the TCPA does not have an attorney fee shifting provision when a plaintiff, as here, wins. Where the statute makes no provision for attorney's fees or costs, that request must be and is DENIED.

Plaintiff seeks treble damages for each of the two cellular telephone calls at issue, for a total of $3,000.00. Generally, a party is liable for a willful and knowing violation of a statute when it acts intentionally, regardless of whether it knows that its actions violate the statute. See Bryan v. United

States, 524 U.S. 184, 193 (1998) ("[T]he knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law."). Thus, to merit treble damages, plaintiff must show that defendant intentionally performed the acts comprising the violation, i.e., making a call using an automatic telephone dialing system or an artificial or prerecorded voice to a cellular telephone number. See 47 U.S.C. § 227(b)(1)(A)(iii).

The record supports a finding of negligent violation, not a knowing or willful one. The record is devoid of evidence of defendant's intention to call a cellular telephone number. Plaintiff argues that defendant's actions were willful and knowing because defendant "did not claim to have accidentally dialed the number that happened to be plaintiff's." (Pl.'s Mot. For Summ. J., 7). However, this alone is insufficient to establish that defendant knew it was making a call to a cellular telephone number, as required under section 227(b)(1)(A)(iii). In the court's discretion, plaintiff's request for an award of treble damages is DENIED. Plaintiff shall recover the sum of $500.00 for each violation, for a total of $1,000.00.

## CONCLUSION

In accordance with the foregoing, the court GRANTS defendant's motion for summary judgment (DE 15) as to plaintiff's FDCPA and NCCAA claims. The court GRANTS plaintiff's motion for summary judgment (DE 17) as to plaintiff's TCPA claim. Plaintiff is awarded the sum of $1,000.00. In all remaining parts, the parties' cross-motions for summary judgment are denied. The clerk is directed to close the file.

SO ORDERED, this the 12th day of February, 2015.

*/s/ Louise W. Flanagan*
LOUISE W. FLANAGAN
United States District Judge

12